IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 7:22-cr-00045 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JAMERE TIRRELL ROBINSON-DAVIS, | ) | By:    Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Defendant Jamere Robinson-Davis ("Defendant") moves this court to overturn the Magistrate Judge's Order of Detention Pending Trial (*See* ECF No. 27) and to release him on bond. (ECF No. 23.) After a careful review of the evidentiary record and the arguments of counsel, the court concludes that there are simply no conditions of pretrial release that would reasonably assure the safety of any person and the community. It will therefore deny Defendant's motion.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On December 1, 2022, the grand jury returned an indictment charging Defendant with two counts of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (*See* Indictment [ECF No. 1].) As explained in more detail below, these two charges are based on Defendant's alleged possession of a loaded, AR-style semiautomatic rifle and, approximately 12 hours later, a loaded .22 caliber pistol. Defendant was arrested on this federal indictment several weeks later and appeared before Magistrate Judge Robert S. Ballou on January 12, 2023, for his initial appearance. On the government's motion, Judge Ballou entered a temporary order of detention at the conclusion of that hearing. (*See* ECF No. 16.)

On January 23, 2023, Defendant appeared with counsel for a formal detention hearing. (*See* ECF No. 19.) In support of its motion for detention, the government presented testimony from the lead case agent, a Roanoke City Police detective assigned to the ATF task force, to summarize the evidence against Defendant, and Defendant's attorney cross examined this witness. The court also considered the Pretrial Services Report prepared by the probation officer, which outlined Defendant's background, including his extensive criminal and probation history.

After considering this evidence and the arguments of counsel,  Judge Ballou found by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any person and the community. Specifically, Judge Ballou noted that the weight of the evidence, combined with Defendant's extensive prior criminal history, substance abuse history, and poor probation history, militated in favor of this conclusion.[1] Accordingly, Judge Ballou granted the government's motion and ordered Defendant detained pending trial.

On January 26, 2023, Defendant filed this motion seeking to overturn Judge Ballou's detention order. (ECF No. 23.) The court directed the government to respond, and it filed a memorandum opposing Defendant's motion. (ECF No. 26.)

## II.   STANDARD OF REVIEW

When a magistrate judge orders the detention of a criminal defendant, the defendant "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The district court reviews the original

---

[1] Judge Ballou determined that Defendant is not a flight risk and did not detain him on that basis.

detention order *de novo. See United States v. Sprouse,* No. 3:12cr200, 2012 WL 2366455, at *2 (W.D.N.C. June 21, 2012). But the reviewing court may rely on the record from the original bond hearing and is not required to conduct a second evidentiary hearing. *See United States v. Jackson*, No. 7:19-CR-126-FL-2, 2019 WL 4689144, at *1 (E.D.N.C. Sept. 25, 2019). Having carefully reviewed the parties' written submissions, the Pretrial Services Report, and the audio of the detention hearing, the court finds that a second hearing and additional oral argument would not aid its decisional process.

### III.   ANALYSIS

"The Bail Reform Act's preference for liberty—a preference that is consistent with and demanded by our entire heritage—ensures that pretrial detention will occur only in unusual circumstances." *United States v. Fattah*, 351 F. Supp. 3d 1133, 1136–37 (N.D. Ill. 2019) (citing *Hamilton v. Lyons*, 74 F.3d 99, 105 (5th Cir. 1996)). Accordingly, a court must order a defendant detained pending trial *only* if it finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). To secure pretrial detention, the government must establish either: (1) by clear and convincing evidence, that "no conditions other than detention will reasonably assure the safety of any other person and the community," *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005) (citing 18 U.S.C. § 3142(f)(2)); or (2) by a preponderance of the evidence, that detention is necessary to reasonably assure the appearance of the defendant at future court proceedings, *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). Ultimately, "[f]or pretrial detention to be imposed on a defendant, the lack of

reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *Stewart*, 19 F. App'x at 48.

In determining whether conditions of release can reasonably assure the safety of the community or the defendant's appearance at future court proceedings, the court considers: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including, among other things, the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings," and probation status at the time of the alleged offense; and (4) the nature and seriousness of the danger that the defendant's release would present to any person or the community. 18 U.S.C. § 3142(g). Defendant is charged with violations of 18 U.S.C. § 922(g)(1), so there is not a rebuttable presumption in favor of detention.

### A.  Nature and Circumstances of the Offenses

The timing of and circumstances surrounding Defendant's alleged violations of § 922(g)(1) indicate that they are more serious than typical "status offenses," as Defendant characterizes (and minimizes) them. (Def.'s Mot. for Bond Review at 2 [ECF No. 23].) At the time Defendant allegedly possessed the loaded AR-style rifle (and the following day, a loaded pistol), he was on a pretrial bond issued by the Roanoke County Circuit Court for another felony gun charge.[2] Remarkably, he had only been out on that bond for a week when he was

---

[2] According to court records, Defendant pleaded guilty to the lesser offense of being a felon in possession of ammunition in January 2023.

arrested on these federal gun charges. Moreover, Defendant's July 1, 2022 arrest on the Roanoke City gun charge was less than two weeks after his release from a Florida state prison, where he had served three years for yet another felony gun offense.

Defendant's alleged underlying conduct is also more aggravating than the typical "status" § 922(g)(1) offense. As the case agent summarized at the detention hearing, on the night of October 24, 2022, a Roanoke City police officer responded to a 911 call about an individual armed with a rifle knocking on the front door of a residence. When the officer arrived at the residence, he encountered an individual, whom he later identified as Defendant standing outside, holding a rifle. The officer pointed his weapon at Defendant and ordered him to drop the gun. Defendant ignored the officer's verbal commands and instead fled on foot with the rifle in hand. Although Defendant was not arrested that night, officers recovered the loaded rifle near the rear of the 911 caller's residence. Apparently, it was leaning against a fence with a live round in the chamber.[3] When officers arrested Defendant at his place of employment approximately 12 hours later, they allegedly found him in constructive possession of a loaded pistol.[4]

The government argues that the reasonable inference to be drawn from these facts—particularly those relating to the incident with the AR-style rifle on October 24—is that Defendant had intended to commit a violent act. After all, he was allegedly on someone's porch with a loaded rifle, including a round chambered and ready to fire. That proffered

---

[3] The fact that Defendant would abandon a loaded AR-style rifle in a residential neighborhood in such fashion further demonstrates that he poses a danger to the community.

[4] Defendant's alleged possession of the loaded pistol a mere 12 hours after his involvement with a loaded AR-style rifle is particularly noteworthy.

inference is consistent with the evidence and common sense, and further supports the notion that there are no conditions of release that would sufficiently mitigate the risk of danger to any other person and the community.

**B. Weight of the Evidence Against Defendant**

As noted above, Defendant is charged with two counts of violating § 922(g)(1).

The evidence underlying the first charged offense—unlawful possession of the AR-style rifle on October 24, 2022—is not overwhelming, but it is likely more than sufficient to sustain a conviction. Although the responding officer was not initially able to identify Defendant as the individual he saw holding the rifle and fleeing on foot,[5] he subsequently identified him after comparing surveillance footage from the homeowner's security system with his own body-cam footage. Presumably, this video footage corroborates his later identification and independently links Defendant to the crime. But there is also circumstantial evidence tying Defendant to the first § 922(g)(1) count. Defendant was stopped by other officers about a block and a half away from the 911 caller's residence within minutes of the incident; his height and weight matched the fleeing suspect's description; and he was wearing the same type of pants as the fleeing suspect. And although Defendant was not in actual possession of the rifle when he was eventually stopped by the police, officers later located it behind the 911 caller's residence, along his presumed flight path.

---

[5] The officer described the suspect as a black male wearing jeans and a white t-shirt. When officers encountered Defendant while canvassing the neighborhood shortly after the suspect fled, he was wearing jeans but was shirtless. Officers described his state of dress as unusual given that the temperature was in the low- to mid-50s that day.

The evidence underlying the second gun count is arguably stronger. The following morning, October 25, having reviewed the video footage and identified Defendant as the individual who had possessed and subsequently fled with the AR-style rife, police officers went to Defendant's place of employment, a moving company, to effectuate an arrest. Defendant subsequently drove up (by himself) in a company truck (the same type of truck that also fled the scene the previous night). After he was taken into custody, officers recovered a loaded .22 pistol lying on the front passenger seat of that truck, on top of various paperwork bearing Defendant's name.

In sum, although Defendant is presumed innocent of both offenses, the government has presented sufficient evidence linking him to the charged offenses.  This also cuts against pretrial release.

## C. Defendant's History and Characteristics

Defendant is 27 years old and, except for his recent three-year stint in a Florida prison, has spent most his life in Montgomery County and Roanoke, Virginia. He is married and has several children. Defendant graduated from high school and reported that he later obtained vocational training in construction and welding. Following his release from prison in June 2022, Defendant obtained a job at a local moving company, and he indicated that his employer is aware of his pending charges but is willing to allow him to continue to work if he is released on bond. At the detention hearing, counsel for Defendant represented that Defendant's wife, who is pregnant with their third child, would be willing to serve as a third-party custodian.

But Defendant has a significant criminal history and a long track record of violating the terms of court-ordered supervision. He has been convicted of grand larceny, burglary,

credit card theft, and, more recently, two state felony gun charges. Despite serving three years in a Florida prison for one of these gun charges, Defendant was arrested in Roanoke less than two weeks after his release for, once again, unlawfully possessing a firearm and ammunition. While he was awaiting trial on that offense—and one week after posting bond—Defendant is alleged to have committed the instant § 922(g)(1) offenses. In addition to allegedly violating the terms of his state bond when he allegedly committed the most-recent federal gun crimes, Defendant necessarily violated the terms of his state probation for several of his prior convictions. And court records indicate that Defendant had several probation violations in the years leading up to his conviction and imprisonment on the Florida gun charges.

Although Defendant has long-standing ties to the local community, some history of employment, and family support, his lengthy (and recent) criminal, probation, and bond history indicates that he has a propensity to commit gun crimes and disregard conditions of supervision imposed by the courts. Indeed, "[p]ast behavior is often prologue and is a proper predictive criterion to be employed in determining whether a person will abide by his or her present promises." *United States v. Fattah*, 351 F. Supp. 3d 1133, 1140 (N.D. Ill. 2019). Finally, even though Defendant's wife is willing to serve as a third-party custodian, for the reasons outlined above, the court finds that this is not a suitable alternative to pretrial detention. As an experienced magistrate judge recently noted, a third-party's willingness to serve as a custodian is beside the point; the relevant inquiry is the defendant's "suitability to be supervised by a third-party custodian and his willingness to comply with conditions of release under the tutelage of someone else." *United States v. Woodward*, No. 2:21-cr-122, 2021 U.S. Dist. LEXIS 240799, at *13 (E.D. Va. Dec. 16, 2021). On that score, Defendant falls well short.

**D. Nature and Seriousness of Danger Defendant Poses to the Community**

As noted above, the nature and circumstances of the charged offenses—particularly Defendant's alleged conduct with the loaded AR-style rifle on October 24, his alleged possession of a different loaded firearm 12 hours later, and Defendant's pretrial and probationary status at the time—strongly indicate that he poses a danger to the community. This evidence-based deduction is reinforced by Congress' view that felons who possess firearms pose an inherent risk of danger to the community. *See United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992) ("[L]egislators, when enacting the felon-in-possession statute, repeatedly referred to the danger that a gun, in the hands of a previously convicted felon, poses for the public."); *United States v. Chappelle*, 51 F. Supp. 2d 703, 704 (E.D. Va. 1999) ("[T]he history of the firearms laws reveals the strong congressional conviction that an armed felon poses a substantial threat to all members of society.") (cleaned up); *United States v. Sloan*, 820 F. Supp. 1133, 1138 (S.D. Ind. 1993) ("[F]elons in possession of firearms are a threat to the safety of society."); *United States v. Phillips*, 732 F. Supp. 255, 263 (D. Mass. 1990) ("Congress prohibited the possession of firearms by felons because it believes that possession of a firearm is particularly dangerous when it is by a convicted felon."); *United States v. Jones*, 651 F. Supp. 1309, 1310 (E.D. Mich. 1987) ("[T]he illegal possession of a firearm is frequently a continuing act, so such risk that it entails is a continuing risk."). If released, Defendant would continue to pose a danger to the community.

## IV.   CONCLUSION

After conducting a *de novo* review of the record and applying the § 3142(g) factors as discussed in detail above, the court concludes that the government has satisfied its burden of

proving, by clear and convincing evidence, that there are no conditions or combination of conditions that would reasonably assure the safety of any person and the community.[6] The Defendant's motion seeking pretrial release is therefore denied.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 3rd day of February, 2023.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[6] The court declines to address the government's argument that Defendant also presents an unmitigated risk of flight.