IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 7:22-cr-00045 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JAMERE TIRRELL ROBINSON-DAVIS, | ) | By:   Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Defendant. | ) | |

Defendant Jamere Robinson-Davis moves this court to dismiss his indictment, which charges him with two counts of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (*See* ECF No. 30.) According to Defendant, the so-called felon-in-possession statute is facially unconstitutional under the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, because possession of a firearm—even by someone who has been convicted of a felony—is protected by the plain language of the Second Amendment, and the government cannot satisfy its burden of showing that § 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. 2111, 2129–30 (2022). For the reasons discussed below, the court will deny Defendant's motion.

### I.   ANALYSIS

Under Federal Rule of Criminal Procedure 12, the court may dismiss charges in an indictment "where there is an infirmity of law in the prosecution," including when the underlying statute is unconstitutional. *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). Defendant brings a facial challenge to §922(g)(1); accordingly, he bears the burden of

establishing "that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

In *District of Columbia v. Heller*, the Supreme Court held that "the right of the people to keep and bear Arms," as stated in the Second Amendment, is an individual right that is not conditioned on service in a state militia. 554 U.S. 570, 595 (2008). Although the majority in *Heller* did not "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," it delineated its core protection: "whatever else it leaves to further evaluation, it surely elevates above all other interests the right of *law-abiding, responsible citizens* to use arms in defense of hearth and home." *Id.* at 635 (emphasis added). But in recognizing this fundamental right, the Supreme Court cautioned that "[l]ike most rights, the right secured by the Second Amendment is not unlimited"; in other words, "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. Moreover, the court specifically noted that it was not questioning the "longstanding prohibition on the possession of firearms by felons." *Id.*

Following *Heller*, numerous Courts of Appeals, including the Fourth Circuit, adopted a two-part framework to evaluate firearms restrictions challenged on Second Amendment grounds. Step one required courts to ask "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). To answer this question at step one, courts had to determine "whether the conduct at issue was understood to be within the scope of the right at the time of [the Second Amendment's] ratification." *Id.*; *see Heller*, 554 U.S. at 625. Assuming that the conduct was within the Second Amendment's scope "as historically

2

understood," step two required courts to apply "an appropriate form of means-ends scrutiny," assessing the burden imposed on the individual's Second Amendment right against the government's interest in regulating the conduct at issue. *Id.* And the Fourth Circuit, relying on *Heller's* decree regarding the continuing validity of § 922(g)(1), has at least twice rejected constitutional challenges to this statute. *See United States v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012) ("Accordingly, Moore has not rebutted the presumption that the presumptively lawful regulatory measure of longstanding prohibition on felon firearm possession is unconstitutional as applied to him."); *United States v. Pruess*, 703 F.3d 242, 246 (4th Cir. 2012) ("Here, Pruess, like the defendant in *Moore*, cannot rebut the presumption of lawfulness of the felon-in-possession prohibition as applied to him.").

Last summer, the Supreme Court issued its opinion in *Bruen*, holding that New York's "may-issue" licensing regime for carrying handguns in public violated the Second Amendment. *Bruen*, 142 S. Ct. at 2122. In so doing, the Court explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm's regulation." *Id.* at 2129–30. The Court noted that "this historical inquiry . . . will often involve reasoning by analogy—a commonplace task for any lawyer or judge." *Id.* at 2132. The Court further explained its new analogical framework:

> Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry. . . . On the one hand, courts should not uphold every modern law that remotely resembles a historical analogue, because doing so risks

3

> endorsing outliers that our ancestors would never have accepted. On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

*Id.* at 2133. The Court further clarified that only after the government has satisfied this burden, "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* at 2126 (cleaned up) (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961). As my colleague Judge Dillon has noted, the Court, "[i]n elucidating this test, . . . supplanted the two-step means-end framework for analyzing Second Amendment challenges that lower courts had coalesced around" in the years following *Heller*. *United States v. Wagoner*, Case No. 4:20-CR-18, 2022 WL 17418000, at *1 (W.D. Va. Dec. 5, 2022).

Following *Bruen*, numerous defendants facing charges under § 922(g)(1) have filed motions to dismiss their indictments as unconstitutional under *Bruen*. Indeed, Defendant Robinson-Davis, like many others before him, argues that the Supreme Court's proclamations about the continued viability of felon-in-possession statutes constitute dicta that simply cannot be reconciled with *Bruen's* strict framework for analyzing firearms restrictions under the Second Amendment. Specifically, Defendant argues that his conduct, even though it is proscribed by § 922(g)(1), is presumptively protected by the plain language of the Second Amendment. Defendant therefore contends that the government must overcome that presumption by establishing, through relevant historical evidence, that this prohibition is in keeping with a longstanding history of felon disarmament. Because felon-disarmament laws, including the original version of § 922(g)(1), were not adopted until the early 20th Century, Defendant argues that the government cannot meet its burden under *Bruen*.

4

But these *Bruen* challenges to the felon-in-possession statute—whether facial attacks or as-applied—have, to date, been uniformly and soundly rejected. Indeed, as of March 14, 2023, at least one circuit court—the Seventh Circuit in *United States v. Gonzalez*, No.22-1242, 2022 WL 4376074 (7th Cir. Sept. 22, 2022)—and, by the government's count, over 100 district courts have held that the federal law prohibiting felons from possessing firearms remains valid even after *Bruen*. *See e.g., United States v. Young*, No. CR 22-054, 2022 WL 16829260, at *11 (W.D. Pa. Nov. 7, 2022) (analyzing *Bruen* and upholding the constitutionality of 18 U.S.C. § 922(g)(1)); *United States v. Minter*, No. 3:22-CR-135, 2022 WL 10662252, at *6–7 (M.D. Pa. Oct. 18, 2022) (same); *United States v. Trinidad*, 2022 WL 10067519, at *3 (D.P.R. Oct. 17, 2022) (same); *United States v. Raheem*, No. 3:20-CR-61-RGJ, 2022 WL 10177684, at *3 (W.D. Ky. Oct. 17, 2022) (same); *United States v. Carrero*, No. 2:22-CR-00030, 2022 WL 9348792, at *3 (D. Utah Oct. 14, 2022) (same); *United States of Am. v. Riley*, No. 1:22-CR-163 (RDA), 2022 WL 7610264, at *13 (E.D. Va. Oct. 13, 2022) (same); *United States v. Price*, No. 2:22-CR-00097, 2022 WL 6968457, at *9 (S.D.W. Va. Oct. 12, 2022) (same); *United States v. Daniels*, No. 1:03-CR-00083-MR, 2022 WL 5027574, at *4 (W.D.N.C. Oct. 4, 2022) (same); *United States v. Charles*, No. MO:22-CR-00154-DC, 2022 WL 4913900, at *12 (W.D. Tex. Oct. 3, 2022) (same); *United States v. Siddoway*, No. 1:21-CR-00205-BLW, 2022 WL 4482739, at *2 (D. Idaho Sept. 27, 2022) (same); *United States v. Collette*, No. MO:22-CR-00141-DC, 2022 WL 4476790, at *8 (W.D. Tex. Sept. 25, 2022) (same); *United States v. Coombes*, No. 22-CR-00189-GKF, 2022 WL 4367056, at *11 (N.D. Okla. Sept. 21, 2022) (same); *United States v. Hill*, No. 21CR107 WQH, 2022 WL 4361917, at *3 (S.D. Cal. Sept. 20, 2022) (same); *United States v. King*, No. 21-CR-255 (NSR), 2022 WL 5240928, at *5 (S.D.N.Y. Oct. 6, 2022) (same); *United States v. Cockerham*, No. 5:21-

CR-6-DCB-FKB, 2022 WL 4229314, at *2 (S.D. Miss. Sept. 13, 2022) (same); *United States v. Burrell*, No. 21-20395, 2022 WL 4096865, at *3 (E.D. Mich. Sept. 7, 2022) (same);*United States v. Ingram*, No. CR 0:18-557-MGL-3, 2022 WL 3691350, at *2 (D.S.C. Aug. 25, 2022) (same); *United States v. Spencer*, No. 2:22CR106, 2022 WL 17585782, at *4 (E.D. Va. Dec. 12, 2022) (same); *UNITED STATES OF AMERICA v. ANDRE BARNES, Defendant.*, No. 22-CR-43 (JPO), 2023 WL 2268129, at *1 (S.D.N.Y. Feb. 28, 2023) (same); *United States v. Beard*, No. 4:22-CR-92-1, 2023 WL 2249986, at *1 (S.D. Tex. Feb. 27, 2023) (same); *UNITED STATES OF AMERICA, Plaintiff, v. GRAYLAN STEVE JOHNSON, Defendant.*, No. 22-CR-20370, 2023 WL 2308792, at *2 (S.D. Fla. Feb. 20, 2023) (same); *United States v. Jackson*, No. CR22-37RSL, 2023 WL 1967199, at *5 (W.D. Wash. Feb. 13, 2023) (same). The court has carefully reviewed many of these decisions and concludes that they are mainly persuasive. Accordingly, this court joins them in holding that § 922(g)(1) remains constitutional after *Bruen*.

Although courts have cited various reasons for denying these *Bruen* challenges, this court adopts what it believes is the most salient rationale, and the one that militates denial of Defendant's motion. Lower courts must take the Supreme Court at its word that its recent jurisprudence, which has further strengthened Second Amendment rights, should not be read to push § 922(g)(1) outside the "safe harbor" of the presumptively valid firearms regulations not subject to heightened scrutiny. Then-Justice Scalia, writing the majority opinion in *Heller*, twice noted that "prohibitions on the possession of firearms by felons" are both "longstanding" and "presumptively lawful." *Heller*, 554 U.S. at 626. Justice Alito reiterated that sentiment two years later in *McDonald v. Chicago*, when the Court invalidated local firearms ordinances under the Second and Fourteenth Amendments, noting that *Heller* "did not cast

6

doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons." 561 U.S. 742, 786 (2010).

Indeed, 12 years later, Justice Thomas, in writing the majority opinion in *Bruen*, cautioned that an individual's Second Amendment right is "subject to certain reasonable, well-defined restrictions." 142 S. Ct. at 2156. Justice Alito, in a *Bruen* concurrence, added that in striking down the New York "may-issue" licensing regime, the court had not "disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 2157. In a separate concurrence, Justice Kavanaugh and Chief Justice Roberts echoed that view, affirming that "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations," including "longstanding prohibitions on the possession of firearms by felons . . . ." *Id.* at 2162 (quoting *Heller* at 636 and *McDonald* at 786).

Defendant Robinson-Davis entreats this court to disregard the above dicta, which, he contends, does not hold up under *Bruen*. Indeed, one may plausibly argue that *Bruen* supplanted, rather than augmented, *Heller* and *McDonald*, and that the relevant historical record is a bit thin in terms of longstanding felon-disbarment laws.[1] If those things are true, then the Court's conclusory edicts about the continuing viability of § 922(g)(1) may ring hollow. But that is not for this (lower) court to decide. As the Fourth Circuit has long recognized, it "cannot simply override a legal pronouncement endorsed by a majority of the Supreme Court,

---

[1] Although the government argues that § 922(g)(1) is consistent with the Second Amendment's relevant historical context, citing British laws mandating the disbarment of "nonconformist Protestants," Colonial American restrictions on possession of firearms by Native Americans and Blacks, and Revolutionary-era loyalty requirements for firearms possession, whether these race-, religious-, and loyalty-based firearms restrictions are proper historical analogues to § 922(g)(1) presents an interesting question for the Court.

particularly when the supposed dita is recent and not enfeebled by later statements." *Hengle v. Treppa*, 19 F.4th 324, 347 (4th Cir. 2021) (cleaned up); *see also Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 281 (4th Cir. 2019) (recognizing the importance of relying on dicta when "grappling with complex legal questions of first impression . . . so as to ensure consistent and uniform development and application of the law").

## II.   CONCLUSION

Accordingly, this court must conclude that the Fourth Circuit decisions in *Moore* and *Pruess*, both of which affirmed the constitutionality of § 922(g)(1) after *Heller*, remain good law and require denial of Defendant's motion. *See United States of Am. v. Riley*, No. 1:22-CR-163 (RDA), 2022 WL 7610264, at *10 (E.D. Va. Oct. 13, 2022) ("Armed with this well-heeled reading of *Bruen*, this Court concludes that the Fourth Circuit's decisions in *Moore* and *Pruess* remain good law and control the disposition of Defendant's motion to dismiss."). Defendant's motion to dismiss is therefore **DENIED**.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 14th day of March, 2023.

/s/ *Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE